Calvin STEELE, Plaintiff-Appellant,

v.

FORD MOTOR CREDIT COMPANY, Defendant-Appellee.

No. 85–8418.

United States Court of Appeals, Eleventh Circuit.

March 3, 1986.

John Riemer, Gainesville, Ga., for plaintiff-appellant.

Stephen H. Block, Burgess W. Stone, Atlanta, Ga., for defendant-appellee.

Before VANCE, Circuit Judge, HENDERSON [*], Senior Circuit Judge, and LYNNE [**], Senior District Judge.

VANCE, Circuit Judge:

In this case we must determine whether appellee Ford Motor Credit Company materially understated the cost of credit in a loan it made to appellant Steele, so that Steele is entitled to relief under the Truth in Lending Act. We conclude that the cost of credit was materially understated and thus reverse the district court's contrary ruling.

## I.

On March 26, 1981, Steele borrowed $3000 from Ford. Steele was to pay interest totaling $945 if the loan remained outstanding for its full 36-month term. As it turned out, however, the loan was paid off early. On July 2, 1981, Steele took out another loan from Ford—this one secured by a second mortgage on his residence—and used part of the additional money to pay off the original loan. Because of this refinancing, Steele's interest obligation on the original loan was reduced by $749.19 (the "rebated interest") so that Steele ended up paying only $195.81 (the "retained interest") on the original loan.

Steele eventually defaulted on the second loan, and Ford filed suit to foreclose on its mortgage. That prompted this action by Steele to rescind the second loan on the ground that Ford materially understated its cost. On motion for summary judgment, the district court concluded that although the cost of credit had been understated, the understatement was not materi-al. The court therefore granted summary judgment for Ford. Steele's motion for a new trial was denied, and he took a timely appeal.[1]

## II.

Steele's argument is based on the premise that Ford rebated too little interest on the first loan. If Ford retained more interest on the first loan than it should have, then the amount of retained interest above what it was properly entitled to was "unearned." Under section 226.8 of former Federal Reserve Regulation Z, 12 C.F.R. § 226.8 (repealed), which governs the loan in question,[2] upon refinancing, any retained unearned interest from the original loan must be included in the finance charge of the new loan. Since Ford did not include its unearned interest in the new finance charge, Steele argues, it understated both the finance charge and the annual percentage rate of the new loan and hence did not properly make the "material disclosures" required by the Truth in Lending Act (TILA). As a result, he concludes, he has the right to rescind the loan under TILA § 125(a), 15 U.S.C. § 1635(a).

Ford disagrees with Steele on two points. First, it contends that it did not retain any unearned interest on the first loan, and therefore did not understate the cost of credit on the second loan. Second, it argues that even if the finance charge and annual percentage rate on the second loan were understated, the understatement was not material.

Thus, our task is to determine whether Ford retained unearned interest in an

---

[*] See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

[**] Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Steele's appeal was filed within thirty days after the district court's ruling on his new trial motion, although more than thirty days after the court's original decision granting summary judgment to Ford. We conclude that Steele's appeal was timely filed even though his motion for a new trial apparently did not contain the certificate of service required by the rules of the district court. Although it might have been proper for the district court to refuse to consider the motion without the certificate, it chose instead to rule on the merits. We are hesitant to dismiss an appeal because of a technical violation of a local district rule which the district court itself chose to ignore, especially since it is clear from Ford's response to the motion that the motion was in fact served.

2. The revised Regulation Z now in effect contains the same provision. See 12 C.F.R. § 226.20.

amount significant enough to cause a material understatement of the cost of credit. Steele claims Ford retained unearned interest in three ways: first, by computing the rebate according to the Rule of 78s; second, by assuming the loan was in the fourth month as opposed to the third month; and third, by charging interest through the 26th of July even though the loan was paid off earlier. Because we find that Ford's retention of interest for a period after the loan was paid off caused a material understatement, we need not consider the other two contentions.

### III.

■ Neither the Truth in Lending Act nor Regulation Z says anything about when interest is earned and when it is unearned. Thus, courts confronted with that question turn to state law. *See, e.g., Varner v. Century Finance Co.*, 720 F.2d 1228 (11th Cir.1983) (certifying question to state supreme court). In this case, the applicable law is that of Georgia. Although Ford concedes that the original loan was not actually outstanding through July 26, it contends that under O.C.G.A. § 7-3-17 it properly calculated the amount of the interest rebate by rounding the loan period up to four full months. The district court, however, held that the interest Ford retained because of rounding was unearned and "should technically have been disclosed as a finance charge on the new loan." Especially in light of the principle that the interpretation of state law by a federal district judge sitting in that state is entitled to deference, *Alabama Electric Cooperative v. First National Bank*, 684 F.2d 789, 792 (11th Cir.1982), we have no difficulty agreeing with this holding. Indeed, as a matter of common sense the conclusion seems inescapable that any interest retained by Ford for a period after the original loan had been paid off was unearned. Ford could not have "earned" such interest within the common meaning of the word since Steele did not have the use of the money after the refinancing.

Operating under the assumption that Ford retained unearned interest for the period from July 2 to July 26—24 days—Steele calculated that Ford had understated the finance charge on the second loan by $36.32 and the annual percentage rate by .17%. The district court, apparently accepting Steele's figures, held that the understatements were not material. Although we conclude that Steele's figures are too high, we nevertheless find that Ford materially understated the cost of the second loan.

As we noted above, any interest charged by Ford on the first loan after it was paid off was unearned. There is an issue, however, as to just when the refinancing occurred. Steele argues that the original loan was paid off as of July 2, the day the paperwork was completed. The second loan agreement, however, provides that the finance charge on the new loan did not begin to accrue until the 10th, and Ford contends that it was entitled to charge interest on the original loan until that date. We agree with Ford. Were we to hold that Steele's interest obligation on the original loan ceased as of the 2nd, the result would be that Steele had the use of Ford's money interest free from the 2nd until the 9th. We find it highly improbable that the parties intended such an unfair result. We therefore hold that the interest retained by Ford was unearned only for the period after interest began to accrue on the refinanced loan—a period of 16 days instead of 24. Consequently, the actual understatement of the finance charge would be somewhat lower than that calculated by Steele; perhaps about $24.

■ Ultimately, however, whether the understatement was $24 or $32 is of no consequence. An examination of our precedents reveals that in this circuit any understatement of the finance charge is a material non-disclosure, although the possibility of a de minimis exception has not been ruled out.[3] The district court relied

---

3. TILA § 103(u), 15 U.S.C. § 1602(u), now de-   fines "material disclosure" as

heavily on *Davis v. Federal Deposit Insurance Corp.*, 620 F.2d 489, 492 (5th Cir. 1980), in which the court concluded that a lender's failure to break down a $25 "other charges" figure into its component charges was not a material non-disclosure. The *Davis* court stated that

> in order for a nondisclosure to be material for rescission purposes ... the plaintiff must show at the least that the nondisclosure of which he complains was that "which a reasonable consumer would view as significantly altering the 'total mix' of information made available. [T]he omission need not be so important that a reasonable consumer would probably change creditors. However, the information must be of some significance to a reasonable consumer ... in his 'comparison shopping' for credit.

*Id.* (quoting *Ivey v. United States Department of Housing & Urban Development*, 428 F.Supp. 1337, 1343 (N.D.Ga.1977)).

A different panel applied a similar standard in *Bustamante v. First Federal Savings & Loan Association*, 619 F.2d 360 (5th Cir.1980). The *Bustamante* court concluded that a material disclosure "relates to information that would affect the credit shopper's decision to utilize the credit," and that materiality should be determined by "an objective standard ... based on what a reasonable consumer would find significant in deciding whether to use credit." *Id.* at 364. The court held that an understatement of the annual percentage rate by 1.31% on a $9800 loan was "so significant that as a matter of law it would affect the credit decision of any reasonable customer." *Id.*

In its opinion, the *Bustamante* court noted the existence of yet a third "material disclosure" case, *Harris v. Tower Loan of Mississippi, Inc.*, 609 F.2d 120 (5th Cir.), *cert. denied*, 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed.2d 30 (1980). In two parentheticals, the *Bustamante* court noted that *Harris* had held that an "understated finance charge is a material nondisclosure." *Bustamante*, 619 F.2d at 364. That reading of *Harris* comports with our own. The *Harris* court stated that "[s]ince the finance charge was understated, Harris was not given an accurate disclosure of the amount of the finance charge as required.... [S]he properly exercised her right to rescind the transaction." *Harris*, 609 F.2d at 123. The court did not consider the size of the understatement to be important. The mere fact that the finance charge was understated at all was enough.

At first glance *Harris* seems inconsistent with the holding of *Bustamante* and *Davis* that an understatement is material only if it would be of some significance to a reasonable consumer. Yet the *Bustamante* court cannot be presumed to have reached a result inconsistent with precedent of which it was obviously aware. We believe that *Bustamante*, *Harris* and *Davis* may be read consistently with each other for the proposition that any understatement of the finance charge is material *because* any understatement would be of some significance to a reasonable consumer. Although this proposition assumes that the finance

the disclosure, as required by this subchapter, of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, and the due dates or periods of payments scheduled to repay the indebtedness.

In addition, revised Regulation Z provides that [t]he finance charge shall be considered accurate if it is not more than $5 above or below the exact finance charge in a transaction involving an amount financed of $1,000 or less, or not more than $10 above or below the exact finance charge in a transaction involv-

ing an amount financed of more that [sic] $1,000.

12 C.F.R. § 226.18(e) n. 41. Although these new provisions do not govern the loan in question here, we would likely reach the same result if they did apply since the finance charge for the loan was understated by more than $10. We note, however, that the new regulation essentially provides that a deviation of less than $5 or $10, depending on the size of the loan, is to be ignored as de minimis. Although our holding today is that any understatement of the finance charge is material, we do not decide whether any deviation from the precise amount of the finance charge, no matter how small, may properly be called an understatement.

charge is somehow more important than other required disclosures, that assumption makes sense. The finance charge is the total cost of the loan to the borrower. Although other factors might also be relevant, cost would likely be of prime importance to most reasonable consumers shopping for loans.

## IV.

Since Ford's retention of unearned interest resulted in non-disclosure of the proper finance charge on the second loan, and since any understatement of the finance charge is material under our precedents, we reverse the district court's grant of summary judgment for Ford and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.